IN THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF
MARYLAND
(SOUTHERN DIVISION)

SHAPELLE STROTHER, *Individually and*     *
*on Behalf of All Other Persons Similarly*
*Situated*

            Plaintiffs,             *

      v.                         *     Case No. 8:22-cv-0845-AAQ

OS RESTAURANT SERVICES, LLC and     *
BLOOMIN' BRANDS, INC.,

            Defendants           *

**MEMORANDUM OPINION**

        This is a dispute over unpaid overtime wages and alleged retaliation under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq* and Maryland state law. Pending before the Court is a Joint Motion and Memorandum for Approval of Settlement of said dispute between the parties pursuant to 29 U.S.C. § 216. For the reasons discussed below, the Joint Motion shall be GRANTED, and the case will be DISMISSED.

**BACKGROUND**

        According to the parties' Joint Motion and Memorandum in Support, Plaintiff Shapelle Strother ("Plaintiff" or "Ms. Strother") was hired as a Front of House Manager at an Outback Steakhouse Restaurant ("Outback") owned by Defendants OS Restaurant Services, LLC and Bloomin' Brands, Inc. ("Defendants"). ECF No. 29, at 1. Ms. Strother alleged that she and others similarly situated in comparable positions with different titles at restaurants in the State of Maryland were "misclassified as exempt and are therefore entitled to overtime wages because their

1

primary duties consisted of non-exempt work, including but not limited to serving and busing tables, bartending, cleaning, cooking, and other customer-facing functions that involve direct interactions with customers." *Id*. at 1-2.  Ms. Strother also alleged that she and other similarly-situated managers worked more than forty hours in a week but were not paid overtime wages. *Id*. at 2.  As a result, Ms. Strother sought compensatory damages, attorney's fees, interest, costs and appropriate additional relief both for her and for the putative class on whose behalf she sought designation and relief.  ECF No. 20, at 13.

Defendants dispute both that Ms. Strother was misclassified as exempt and that she was not paid according to applicable law.  ECF No. 29, at 3.  Parties also dispute whether any FLSA or state law violation occurred or was willful.  *Id*.  Parties further dispute the number of hours over forty Ms. Strother worked in a week during her tenure at Outback.  *Id*.

Following exchange of facts and details in the Complaint but prior to moving for certification or conducting any formal discovery, parties engaged in mediation before the Court on September 27, 2022.  *Id*. at 2.  After reaching an agreement, counsel for the parties filed the present Joint Motion on November 29, 2022.  *Id*.

## STANDARD OF REVIEW

When evaluating settlement agreements for approval under the FLSA, courts should approve settlements that "reflect[] a 'reasonable compromise of disputed issues' rather than 'a mere waiver of statutory rights brought about by an employer's overreaching.'" *Saman v. LBDP, Inc.*, No. DKC 12-1083, 2013 WL 2949047, at *2 (D. Md. Jun. 13, 2013) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982)).

In making such a determination, typically, district courts in the Fourth Circuit "employ the considerations set forth by the Eleventh Circuit in *Lynn's Food Stores*." *Id*. at *3 (citing *Hoffman*

*v. First Student, Inc.*, No. WDQ-06-1882, 2010 WL 1176641, at *2 (D. Md. Mar. 23, 2010); *Lopez v. NTI, LLC*, 748 F.Supp.2d 471, 478 (D. Md. 2010)). Those considerations include ensuring there is a "fair and reasonable resolution of a *bona fide* dispute over FLSA provisions," and evaluation of the following: (1) whether there are FLSA issues actually in dispute; (2) the fairness and reasonableness of the settlement in light of the relevant factors; and (3) the reasonableness of the attorneys' fees, if included in the agreement. *Id.* (citing *Lynn's Food Stores, Inc.*, 679 F.2d at 1355; *Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 08-1310, 2009 WL 3094955, at *10 (E.D. Va. Sept. 28, 2009); *Lane v. Ko-Me*, *LLC*, No. DKC-10-2261, 2011 WL 3880427, at *2-3 (D. Md. Aug. 31, 2011)). Evaluation of the aforementioned follows with discussion of the relevant facts.

## DISCUSSION

The parties have asked the Court to approve their proposed Settlement Agreement and dismiss this case. I find that approval is proper as the Settlement Agreement reflects a fair and reasonable resolution of a *bona fide* dispute between the parties and includes a reasonable award of attorney's fees.

**A. There is a *Bona Fide* Dispute Between the Parties.**

To determine whether a *bona fide* dispute exists as to a defendant's liability under the FLSA, the Court should "examine the pleadings in the case, along with the representations and recitals in the proposed settlement agreement." *Duprey v. Scotts Co. LLC*, 30 F.Supp.3d 404, 408 (D. Md. 2014) (citing *Lomascolo*, 2009 WL 3094955, at *16-17). Disagreement over an employee's classification constitutes a *bona fide* dispute for FLSA claims. *See Smith v. David's Loft Clinical Programs, Inc.*, No. 21-cv-03241-LKG, 2022 WL 16553228, at *4 (D. Md. Oct. 31, 2022) (finding a *bona fide* dispute where plaintiffs alleged that they were misclassified as exempt employees under the FLSA and defendants said they relied on legal advice in making their

3

classification). Disagreement over rates of pay and hours worked can constitute *bona fide* disputes over a defendant's liability. *Duprey*, 30 F.Supp.3d at 408 (finding a *bona fide* dispute where "parties disagree[d] about Duprey's rate of pay and hours worked.").

In their Joint Motion, the parties highlight the FLSA issues that constitute a *bona fide* dispute. Parties dispute whether Ms. Strother was correctly or incorrectly classified as an exempt employee pursuant to the FLSA. ECF No. 29, at 3. Defendants further dispute that any FLSA or state law violation that allegedly occurred was willful. *Id*. Parties also dispute the number of hours over forty worked in a given work week by Ms. Strother during her employment. *See* ECF No. 24, at 2. This Court has found these issues to be *bona fide* disputes. As a result, I find that a *bona fide* dispute exists between the parties under the FLSA.

### B. The Settlement Agreement is Fair and Reasonable.

Next, the Court considers whether a settlement agreement is fair and reasonable. In assessing whether a settlement is fair and reasonable, the Court should evaluate the following six factors: "(1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense, and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs; (5) the opinions of [ ] counsel . . . ; and (6) the probability of plaintiffs' success on the merits and the amount of settlement in relation to potential recovery." *Saman*, 2013 WL 2949047, at *3 (quoting *Lomascolo*, 2009 WL 3094955, at *10).

The first factor asks courts to consider the extent to which discovery has taken place. When looking at this factor, courts assess whether the parties have "had adequate time to conduct sufficient discovery to 'fairly evaluate the liability and financial aspects of [the] case." *Lomascolo*, 2009 WL 3094955, at *11 (citing *In re A.H. Robins Co., Inc.*, 88 B.R. 755, 760 (E.D. Va. 1988)).

While the parties in this case did not conduct formal discovery, "[b]y avoiding formal discovery, resources that otherwise would have been consumed by the litigation [can be] made available for settlement, and the risk and uncertainties for both parties [can be] reduced." *Duprey*, 30 F.Supp.3d at 409.  Here, parties exchanged information related to damages calculations, ECF No. 31, and concluded that settlement was in their respective best interests, given the number of legal issues at play and the potential duration of future litigation.  ECF No. 29, at 2.

The second factor looks to the current stage of the proceedings.  Settlements can be held fair where proceeding further would be difficult and costly and the parties would prefer to end proceedings before significant investment in litigation.  Here, the parties aver that the settlement "enables all parties to avoid unnecessary accumulation of additional litigation costs and attorney's fees."  ECF No. 29, at 4.  *See Black v. Reviera Enter., Inc.,* No. DLB-19-201, 2020 WL 6544820, at *2 (D. Md. Nov. 6, 2020) (holding settlement agreement was fair and reasonable where parties recognized remaining discovery would require significant investment of time, effort, and financial resources); *Saman*, 2013 WL 2949047, at *4 (finding that the parties' representation that they wished "to avoid the costs of formal discovery, dispositive motions, and a possible trial" bolstered the decision to "engage in informed arms-length settlement negotiations with the understanding that it would be a difficult and costly undertaking to proceed.").  Given parties' joint preference to terminate proceedings early rather than invest time and money into litigation, this factor weighs in favor of finding that this Settlement Agreement is fair.

The third factor assesses whether there has been fraud or collusion in the formation of the settlement.  There are no facts presented that suggest either, allowing the presumption "that no fraud or collusion occurred between counsel, in the absence of any evidence to the contrary." *Lomascolo*, 2009 WL 3094955, at *12.  The terms of this settlement were reached in settlement

negotiations with my chambers: the presence of a judge in negotiations supports the finding that there was a lack of fraud and collusion. *See Majed Tomeh v. Veriphyr, Inc.*, No 8:21-cv-2914-AAQ, 2022 WL 1422897, at *3 (D. Md. May 5, 2022); *Fonseka v. Alfredhouse Eldercare, Inc.*, No. GJH-14-3498, 2015 WL 3863068, at *3 (D. Md. Jun. 19, 2015).

Under the fourth factor, courts look to the experience of counsel. Generally, where counsel is well-versed in the underlying law, courts presume that clients have been appropriately advised on the merits and challenges associated with settlement, as opposed to further litigation. *See Hackett v. ADF Rest. Investments*, 259 F.Supp.3d 360, 366 (D. Md. 2016) (finding a fair and reasonable settlement where counsel had litigated numerous lawsuits involving wage and hour violations). Here, Plaintiff is represented by HKM Employment Attorneys LLP. ECF No. 29, at 8. Plaintiff's counsel avers that the firm has handled numerous FLSA cases in both federal and state court, which necessitates knowledge of the relevant law that would impact Plaintiff's ultimate recovery. *Id*. at 6. Plaintiff's lead counsel, Ms. Tiffany Joseph Goodson, is the managing partner of HKM's Washington, DC and Arlington, VA offices and focuses her practice on employment matters. *Tiffany Joseph Goodson,* HKM EMPLOYMENT ATTORNEYS, https://hkm.com/attorneys/tiffany-joseph-goodson/ (last visited Feb. 2, 2023). Accordingly, I am satisfied that Plaintiff's counsel is sufficiently experienced in litigating similar matters.

The fifth factor incorporates the opinions of counsel. Counsels' opinion that the expense and potential duration of litigation weighs in favor of early settlement lends credence to a proposed settlement agreement. *Castro v. Early Learning Language Academies, LLC*, No. CBD-18-2421, 2021 WL 915106, at *4 (D. Md. Mar. 9, 2021). In their Joint Statement, parties agree that "an amicable resolution of this lawsuit is in their respective interests due to the risks and expenses associated with continued litigation." ECF No. 29, at 2. Counsel notes that the settlement is "the

product of good faith bargaining between the parties, with the advice of legal counsel" and is a "fair and reasonable settlement" when considering costs associated with litigation and "the uncertainty of the availability of liquidated damages." *Id*. at 4-5.

Applying the sixth factor, courts weigh the probability of a plaintiff's success and the relationship between the amount of the settlement and the potential recovery. Plaintiff faces multiple challenges before her ultimate recovery in this case. First, she must succeed in certifying the purported class for the FLSA claims. After certification, Plaintiffs must then show that the position of Front of House Manager was misclassified based on required duties, even though the generic position of manager is "traditionally entitled to the executive exemption." *Hunt v. Aldi, Inc.*, No. CBD-18-2485, 2020 WL 7332715, at *4 (D. Md. Dec. 11, 2020). This is before proving the number of overtime hours she worked, evidence of which the parties acknowledge may not be available. ECF No. 24, at 8. The settlement accounts for a payment of $19,750 – $11,812.44 of which would go to Ms. Strother. ECF No. 29-1, at 2. Of that amount, $5,906.22 would be designated as wages and $5,906.22 would be designated as liquidated damages. *Id*. Plaintiff initially sought $38,944.00 in unpaid wages: she calculated these damages by alleging that she worked an average of fifty-eight hours per week over approximately sixty weeks and was entitled to $36.06 per hour over forty in a week, based on her salary of $50,000, where her overtime rate would be 1.5 times her regular rate of pay. ECF No. 31, at 2. Defendants dispute this method of calculation, the number of hours that Plaintiff worked, and whether Defendants' alleged violation was willful. *Id.*

Under the FLSA, liquidated damages equal to unpaid overtime compensation are mandatory unless "the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that

his act or omission was not a violation of the [FLSA]." *Perez v. Mountaire Farms, Inc.*, 650 F.3d 350, 375 (4th Cir. 2011) (citing 29 U.S.C. § 260).  When assessing the fairness of settlement agreements, this Court tends to look at the total settlement received – inclusive of allocation to both back pay and liquidated damages – and compares that number to claimed actual damages. *See Wade v. CBH Health, LLC.*, No. PX-20-3573, 2021 WL 8269082, at *4 (D. Md. Oct. 15, 2021) (recommending approval of settlement in which Plaintiffs received in total 34% and 21% of their claimed actual damages despite the fact that "the amounts Plaintiffs have agreed to receive in settlement are far below their claims set forth in their complaint" because "[t]his too can be quite typical of litigation and of reasonable compromise.") (report adopted by paperless order, ECF No. 18 (Nov. 1, 2021)).

      This settlement results in Plaintiff receiving 15% of her back pay using Plaintiff's method of calculation.  Treating her recovery as a lump sum, her total recovery including liquidated damages results in a payment equivalent to 30% of claimed damages using Plaintiff's method. Courts have found similar settlements to be reasonable.  *See Gue v. Shree Pashuapati Corp.*, No. DKC-21-44, 2021 WL 2414866, at *2 (D. Md. Jun. 14, 2021) (approving settlement in which Plaintiff received, in total, 20% of claimed backpay); *Lee v. Ex-Exec Lube, LLC*, No. DLB-19-3195, 2021 WL 1117274, at *2 (D. Md. Mar. 24, 2021) (approving settlement in which Plaintiff received, in total, 14% of claimed backpay).  While it is true that Plaintiff could conceivably receive more at trial than in this settlement, such a recovery would require a finding in her favor not only on her eligibility for damages, but also on her preferred method of calculation and her actual number of hours worked; as noted, Defendants dispute all three of these issues.  Defendants similarly dispute that any alleged violation was willful, creating a barrier to the acquisition of liquidated damages.  As such, the mere possibility of greater recovery does not make this

settlement unfair. *See Kuntze v. Josh Enterprises, Inc.*, No. 2:18cv38, 2019 WL 2179220, at *3 (E.D. Va. May 20, 2019) ("[T]here is also a possibility that Plaintiff is entitled to a lesser amount of damages or no damages at all. Thus, the probability of full recovery is not so great as to outweigh the benefits of settlement in this case.").

This Settlement Agreement does contain a general release of claims by the Plaintiff that exceeds those specified in the Complaint.[1] ECF No. 29-1, at 3. Such a release can render the Settlement Agreement unreasonable. *Duprey*, 30 F.Supp.3d at 410 (referencing *Moreno v. Regions Bank,* 729 F.Supp.2d 1346, 1352 (M.D. Fla. 2010)). However, so long as the "employee is compensated reasonably for the release executed, the settlement can be accepted" and I do not need to consider the "reasonableness of the settlement as to the non-FLSA claims." *Id. See Gue*, 2021 WL 2414866, at *1 (finding settlement reasonable despite presence of general release); *Lee*, 2021 WL 1117274, at *1 (same). As noted above, the settlement provides an amount greater than Plaintiff may receive at trial given the uncertainty as to the number of hours she worked, and the alleged willful nature of Defendants' conduct.

Upon consideration of these factors, the Court finds the settlement to be fair and reasonable.

### C. The Settlement Agreement Awards Reasonable Attorneys' Fees.

The Settlement Agreement must also contain reasonable provisions for allocating attorney's fees. *Duprey*, 30 F.Supp.3d at 411. Here, the parties have decided upon an allocation of $7,937.55 in attorney's fees. ECF No. 29-1, at 2. This fee award is a product of a contingency agreement between Ms. Strother and her attorney. ECF No. 29, at 5.

---

[1] Importantly, the Release binds only the Plaintiff and not any members of the putative class, as no class was certified. ECF No. 29-1, at 1, 3-5.

"An attorneys' fee award negotiated pursuant to a contingent-fee arrangement can be approved if the court finds (1) that the fees were negotiated separately from the damages, so that they do not infringe on the employee's statutory award, and (2) that they are reasonable under the lodestar approach." *Quevedo v. HBJ, Inc.*, No. PWG-14-734, 2014 WL 3970173, at *5 (D. Md. Aug. 13, 2014). The lodestar approach "multiplies 'the number of hours reasonable expended . . . by a reasonable hourly rate' to achieve 'an objective basis on which to make an initial estimate of the value of a lawyer's services.'" *Id*. (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). Under the lodestar approach, an hourly rate "is reasonable if it is 'in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" *Duprey*, 30 F.Supp.3d at 412 (quoting *Blum v. Stenson*, 465 U.S. 886, 890 n. 11 (1984)). This Court maintains guidelines regarding appropriate hourly rates in Appendix B to its Local Rules. U.S. District Court, District of Maryland, Local Rules (D. Md. Jul. 2021).

In the Joint Motion, counsel avers that the fee award is the product of an arrangement articulated in Plaintiff's Fee Agreement. ECF No. 29, at 5. According to the Joint Motion, Plaintiff's counsel has spent over 45 hours "(1) communicating with Plaintiff throughout these proceedings; (2) investigating potential claims in this case; (3) drafting the Complaint and First Amended Complaint; (4) conducting substantial research, including [the computation of overtime pay given the fluctuating hours that Plaintiff worked each week]; (5) conferring and negotiating with Defendants' counsel; (6) preparing for and attending a Court hearing; and (7) participating in negotiations with Defendants and attending the Court settlement conference." *Id*. In calculating her fees, Plaintiff's counsel has applied a rate of $450 per hour, which counsel alleges is below the normal and customary rate she usually charges. *Id*. at 6. The ultimate amount requested is heavily discounted from the actual lodestar, which exceeds $20,000. *Id*. at 8. While the hourly rate

10

requested is on the upper end of the guidelines promulgated by the District, the reduced amount requested accounts for any discrepancy that may exist between the guidelines and the requested rate. *See Galizia v. Ricos Enterprises, Inc.*, No. DKC 21-2592, 2022 WL 374511, at *3 (D. Md. Feb. 8, 2022) ("Clearly, the fee requested is a small percentage of the actual fees incurred and is entirely reasonable.").

Accordingly, I find that the Settlement Agreement awards reasonable attorney's fees.

## CONCLUSION

For the reasons stated above, the Joint Motion for Judicial Approval of Settlement will be GRANTED and this case shall be DISMISSED with prejudice.

So ordered.

Date:   February 3, 2023                           __/s/_____
                                                   Ajmel A. Quereshi
                                                   United States Magistrate Judge